RECEIVED
USDC CLERK, CHARLESTON, SC

2007 JUN -7  A 11: 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony Jesus Johnson, #261882, | ) C. A. No. 2:06-2593-GRA-RSC ) ) |
| Petitioner, | ) ) |
| -versus- | ) **REPORT AND RECOMMENDATION** ) |
| State of South Carolina; Henry D. McMaster, Attorney General of the State of South Carolina; and Warden, McCormick Correctional Institution, | ) ) ) ) ) ) ) |
| Respondents. | ) |

This habeas corpus petition under 28 U.S.C. § 2254 brought by a state prisoner proceeding <u>in forma pauperis</u> is before the undersigned United States Magistrate Judge for a report and recommendation on the respondents' summary judgment motion filed on January 18, 2007. 28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

The petitioner, Anthony Jesus Johnson, is currently incarcerated in the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court of Greenville County. Petitioner was indicted in February 1998 for Trafficking in Cocaine. (PCR App. p. 291). William G. Yarborough, III, represented Petitioner on the charge. Petitioner's case was called to trial on October 20, 1999, before the Honorable C.

Victor Pyle, Jr. The jury convicted Petitioner as charged on October 21, 1999. The judge sentenced Petitioner to twenty-five (25) years imprisonment.[1] (PCR App. p. 225). Petitioner filed a timely notice of intent to appeal.

Trial counsel initially continued to represent Petitioner on appeal; however, trial counsel was subsequently placed on inactive status, and Jeffrey A. Merriam, Esquire, was appointed to oversee former counsel's files. Everett P. "Bill" Godfrey, Esquire, subsequently assumed representation. Godfrey was relieved as counsel at Petitioner's request,ardirect J. Falkner Wilkes, Esquire, assumed representation. Wilkes, as appellate counsel, filed a Final Brief of Appellant in the South Carolina Court of Appeals on October 11, 2001, and raised the following issues:

> I.   The Court erred in allowing inadmissible hearsay to establish material facts in question.
>
> II.  The Court erred in allowing evidence of a prior conviction of a crime similar to the offense charged.
>
> III. The Court [sic] in allowing the fruits of an unlawful seizure.
>
> IV. The Court erred when it denied Appellant's motion for a continuance based upon the fact that Cassandra Jones (Informant) was not present at the trial of the case.

---

[1] Petitioner was also subsequently convicted of murder in November 2004 and was sentenced to life. That conviction is not under attack here.

2

>   V.   The Court erred when it limited Appellant's cross-examination of Detective Eric L. Cureton regarding his testimony in the case of <u>State v. Missouri</u>, 377 S.C. 548, 524 S.E.2d 394 (1999).

(Appellant's Brief, p. i).

The South Carolina Court of Appeals issued an unpublished opinion on August 20, 2002, affirming the conviction. <u>State v. Johnson</u>, UP opinion No. 2002-UP-512 (S.C.Ct.App.). Petitioner did not seek a rehearing or review in the Supreme Court of South Carolina. The Court of Appeals issued the remittitur on September 5, 2002.

On July 24, 2003, Petitioner filed a <u>pro se</u> application for post-conviction relief ("PCR"), and alleged the following:

>   10(a) Ineffective assistance of counsel in that trial counsel was not diligent in his representation of applicant, did not perform within the range of competence demanded of attorneys in criminal matters, and failed to perform within the range of reasonable professional assistance and the deficient performance prejudiced the defense so as to deprive the applicant of a fair trial.
>
>   11(a) Conviction and sentence violate U.S. and S.C. Constitutions in that it was predicated on ineffective assistance of counsel in that trial counsel was deficient in not objection to hearsay and allowing a prejudicial line of questioning.
>
>   (b) Trial counsel erroneously advised Petitioner that another separate charge was being tried and not the drug charge which was tried. Trial counsel had previously informed Petitioner that the drug case was dismissed. Petitioner and trial counsel had no conferences concerning the drug case and no defense preparation was undertaken prior to the trial and trial counsel was not adequately prepared trial. [sic]

>    (c) Trial counsel did not adequately investigate the circumstances of the charge pending against applicant.
>
>    (d) Trial counsel did not discuss the possible maximum penalty that the applicant faced.
>
>    (e) Trial counsel did not adequately ascertain the applicant's version of the facts of the case.
>
>    (f) Trial counsel did not investigate possible defenses or discuss any potential defenses or defense strategies with Petitioner.
>
>    (g) Trial counsel failed to interview of present relevant witnesses and evidence in Petitioner's favor.
>
>    (h) Trial counsel did not discuss with the applicant the nature and extent of the evidence which the State had against him nor provide the applicant with any assessment of the State's case.
>
>    (i) Trial counsel did not object to the chain of custody or move to suppress the evidence based on discrepancies in the chain of custody.
>
>    (j) Trial counsel did not review discovery material with applicant or discuss with the applicant the testimony that any of the State's witnesses could offer against him.
>
>    (k) Trial counsel did not work diligently to negotiate a reasonable plea agreement.
>
>    (l) Trial counsel's state of mind and effectiveness was impaired by his drug abuse before and during the trial.

(PCR App. pp. 234-235).

Clarissa Warren Joyner, Esquire, represented Petitioner in his PCR action. An evidentiary hearing was held April 23, 2004, before the Honorable Edward W. Miller, at which Petitioner pursued only the following issues:

4

>   1.  Counsel was ineffective for failing to object to the admission of a prior 1992 conviction for possession of cocaine for impeachment;
>
>   2.  Counsel was ineffective for failing to make a sufficient motion for continuance;
>
>   3.  Counsel was ineffective for failing to secure the presence of the known drug informant during the trial;
>
>   4.  Counsel was ineffective for failing to adequately prepare for trial.

(PCR App. pp. 242-244).

On July 7, 2004, the PCR judge issued an order denying relief. (PCR App. pp. 284-289). Petitioner filed a timely notice of intent to appeal represented by Joyner. On July 27, 2005, she filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina, and raised the following issues:

>   I.  Whether trial counsel was ineffective for failing to object to admission of prior drug conviction on the basis that the prejudicial effect of Petitioner's prior conviction outweighed its probative value because of the similarity between the prior conviction and the crime charged?
>
>   II. Whether trial counsel was ineffective for failing to properly move for a continuance in order to bring the confidential informant into court who was a material witness in the case?
>
>   III. Whether trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result?

(Petition for Writ of Certiorari, p. 3).

The case was apparently transferred to the South Carolina

Court of Appeals. See Rule 227 (1), South Carolina Rules of Appellate Practice ("The Supreme Court may transfer a case filed [...pursuant to certiorari review procedures in PCR actions...] to the Court of Appeals."). The South Carolina Court of Appeals denied the petition on July 5, 2006. Petitioner did not seek review from the Supreme Court of South Carolina. The Court of Appeals issued the remittitur on July 28, 2006.

The following documents have been made part of the record here:

    1. PCR Appendix, containing:

        a. October 20-12, 1999 Trial Transcript;

        b. Greenville Crime Laboratory Report;

        c. PCR Application;

        d. Return (to PCR Application);

        e. April 23, 2004 PCR Hearing Transcript;

        g. July 7, 2004, Order of Dismissal;

        h. Sentencing Sheet;

        i. Indictment;

        j. Brady Request Motion;

        k. Rule 5 Motion;

        l. Notice of Motion and Motion for a Speedy Trial;

        m. South Carolina Department of Corrections Inmate Records.

    2. September 26, 2000, Letter of the Clerk of the South Carolina Court of Appeals to Jeffrey A.

Merriam, Esquire (re: William G. Yarborough clients and files);

3. October 23, 2000, Notice of Motion and Motion for Substitution of Counsel, and Certificate of Service;

4. November 7, 2000, Order of the South Carolina Court of Appeals (re: substitution of counsel);

5. Motion to Substitute Counsel; Withdraw Initial Brief of Appellant and Reset the Time for Filing the Initial Brief of Appellant and, The Designation of Matter to be Included in the Record on Appeal; and, Proof of Service;

6. May 8, 2001, Order of the South Carolina Court of Appeals (relieving appellate counsel);

7. May 18, 2001, Order of the South Carolina Court of Appeals (granting motion to substitute counsel, withdraw initial brief, and reset time limits);

8. Appellant's Brief;

9. Final Brief of Respondent;

10. State v. Johnson, Unpublished Opinion No. 2002-UP-512 (S.C.Ct.App. Filed August 20, 2002);

11. September 5, 2002, Remittitur Letter of the South Carolina Court of Appeals;

12. Petition for Writ of Certiorari;

13. Return to Petition for Writ of Certiorari;

14. July 5, 2006, Order of the South Carolina Court of Appeals (denying petition);

15. July 28, 2006, Remittitur Letter of the South Carolina Court of Appeals;

16. 2004 Sentencing Sheet (reflecting murder conviction and life sentence in 04-GS-23-3501).

This petition was filed on September 19, 2006, and generally asserted that all questions presented in his direct appeal and PCR were wrongly decided.

The petitioner was provided a copy of the respondents' summary judgment motion on October 27, 2006, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). On March 16, 2007, Petitioner filed a motion to withdraw his petition which was opposed by the respondents on March 19, 2007. On March 21, 2007, attorney Jeffrey Falkner Wilkes noticed his appearance for the petitioner in the matter. Petitioner through Wilkes filed a response to the summary judgment motion and a motion to amend the petition on April 20, 2007. On April 30, 2007, the respondents filed a reply. Therefore it appears that consideration of the motion is appropriate.

## **APPLICABLE LAW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, is applicable to this action challenging the 1999 conviction. Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Additionally, Title 28, U.S.C., Section 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this

9

subsection.

## DISCUSSION

Dispositive of this matter is the respondents' correct contention that this petition was filed untimely and should be dismissed on that basis.

Petitioner's direct appeal became final on September 5, 2002, when the South Carolina Court of Appeals issued the remittitur ending appellate jurisdiction. See <u>Christy v. Christy</u>, 317 S.C. 145, 151, 452 S.E.2d 1, 4 (Ct.App. 1994)("The final disposition of a case occurs when the remittitur is returned by the clerk of the appellate court and filed in the lower court."). Further, because Petitioner failed to seek rehearing before the Court of Appeals and could not petition for a writ of certiorari in the state supreme court, he is not entitled to tolling for the additional period of ninety (90) days in which to seek certiorari review from the United States Supreme Court as the failure to seek certiorari from the Supreme Court of South Carolina precluded him from meeting the jurisdictional requirements of the United States Supreme Court. 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari..."); Sup. Ct.R. 13(1)(time limits run from decision of "a state court of last resort" or an order of the "state court of last resort" denying discretionary review if decision to be challenged is from a lower state court).

Petitioner's failure to apply for certiorari at the state level divested the United States Supreme Court of jurisdiction to grant or deny a writ of certiorari, thus the petitioner does not get an additional ninety (90) day period to seek certiorari. Therefore, Petitioner's federal time began to run after the issuance of the remittitur[2] on September 5, 2002.

Petitioner filed his PCR action on July 24, 2003, tolling the time period after three hundred and twenty-two (322) days of time not tolled by the statute had lapsed. Petitioner's PCR action concluded upon issuance of the remittitur on July 28, 2006. Petitioner did not file this action until September 19, 2006. An additional fifty-three (53) days of time not tolled by the statute lapsed. In sum, a total of three hundred and seventy-five (375) days of time not tolled by the statute lapsed before the filing of the instant action. Subtracting the three hundred and sixty-five (365) days Petitioner had in which to file a timely petition under the AEDPA, the instant petition is ten (10) days too late.

---

[2] See, <u>Dodd v. Ozmint</u>, 2007 WL 328785 February 5, 2007 (G. Ross Anderson) "The South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. .... The remittitur was entered on May 12, 2000. The petitioner did not seek rehearing before the Court of Appeals pursuant to SCACR Rule 219 and 221 and therefore could not seek certiorari in either the South Carolina Supreme Court pursuant to SCACR Rule 226(c) and (d)(2) or the United States Supreme Court. The failure to seek a petition for rehearing made the action final on May 12, 2000, when the remittitur was entered."

Counsel for Petitioner asserts that the petition is not barred by the statute of limitations. He argues that Respondents mistakenly used "the date that the petition was received and filed by the district court in this case rather than the date the petition was completed and placed in the prison mail system" and claims that "[u]nder the mail box rule the petition is timely." (Opposition at pg. 1). See Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988)(notice of appeal considered filed upon delivery to prison officials for forwarding to court). It appears that the petitioner is incorrect.

The Houston v. Lack "mailbox" rule has been extended to AEDPA statute of limitations calculations in several of the Circuits. See, e.g., Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999)("We join the overwhelming authority that the Houston mailbox rule should be extended to prisoners filing pro se habeas petitions, and, for statute of limitations purposes, a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk."); Zarvela v. Artuz, 254 F.3d 374, 377 (2nd Cir. 2001); Burns v. Morton, 134 F.3d 109, 113 (3rd Cir. 1998); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999). Each of these cases focuses on the fact that incarcerated inmates have relied on prison officials to forward the petitions to the appropriate court. The Supreme Court

created the exception for prisoners who attempt to file within the mandatory periods, but are restricted to reliance on the prison mail system for delivery of their filings to courts. Houston v. Lack, 487 U.S. at 271, 108 S.Ct. at 2382 ("the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay").

Still, the rule does not apply where other means are available to the prisoner because the rule relies on the notion that "[t]hey cannot deliver a copy of their document to the clerk by hand" nor have other means of service. Lewis v. Richmond City Police Dept., 947 F.2d 733, 735 (4th Cir. 1991).

Therefore, the exception is not available when the prisoner does not depend on the prison mail system for delivery of his papers, as here. The court's records reflect that Petitioner did not use the "prison mail system." Rather the petition was hand delivered on September 19, 2006, to the Clerk of Court in Greenville, South Carolina. (Document 4: Notice of Electronic Filing of the Order authorizing service of process on the Respondents, "Note: no envelope; delivered in person to Clerk's office."). Since Petitioner was not relying on the prison mail system, Houston v. Lack is simply not applicable. See also Price v. Philpot, 420 F.3d 1158, 1166 (10th Cir. 2005)("If a legal mail system were available, Price would be required to use it to

13

obtain the benefit of the mailbox rule"); United States v. Bell, 203 F.Supp.2d 1287, 1291 (S.D. Ala. 2002)(rejecting compliance argument where petitioner simply handed his "motion to a counselor with no apparent authority to mail the document" and did not use the established federal prison mailing procedures); Rule 4( c), F.R.A.P. ("If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule.").

Petitioner's argument that the time for filing runs from the date of his signature is likewise unavailing. Houston v. Lack did not create unlimited exceptions to the Federal Rules of Civil Procedure for prisoners. See Lewis v. Richmond City Police Dept., 947 F.2d at 736 ("Houston does not create an exception by which incarcerated litigants may avoid time restrictions."). Rather, the Supreme Court created a specific narrow exception which requires proof that the prisoner adhered to the standard deadlines up until he had no power or control over the mail delivery. Specifically, he must prove he delivered his petition to the proper prison authorities, not simply that he signed his petition. A "signing rule" is far outside the strictures of Houston v. Lack which specifically noted that the created "delivery rule" would depend upon regularly maintained institution records and proof of compliance by the incarcerated petitioner. Houston v. Lack, 487 U.S. at 275, 108 S.Ct. at 2385.

14

("Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one").

Petitioner also submits that he is entitled to equitable tolling based on his "diligence" in seeking to start his action. However, the petitioner has failed to show "(1) that he has been pursuing his rights diligently, and (2) that some 'extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, ___ U.S. ___, ___, 127 S.Ct. 1079, 1085 (2007) quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 1807 (2005). The Fourth Circuit has held "that § 2244(d) is subject to equitable tolling, at least in principle." Harris v. Hutchinson, 209 F.3d 325, 329-30 (4th Cir. 2000). However, to be entitled to equitable tolling, a party must show "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003)(en banc). Here, Petitioner relies only on the fact that he must depend on the prison mail system, when, in fact, he did not rely on the prison mail system at all. His basis for seeking equitable tolling is wholly without factual support. The petition should be summarily dismissed as Petitioner failed to timely file under the AEDPA.

Lastly, to the extent the Petitioner seeks to amend his petition, that motion should be denied as futile because the action should be summarily dismissed for failure to file within the statute of limitations. See <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000)("Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied.").

### **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the respondents' motion for summary judgment on statute of limitation grounds should be granted and the petitioner's motion to amend his petition should be denied.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
~~May~~ June 7, 2007